IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DONALD WAYNE DWYER,
ADC #145533                                                                                      PLAINTIFF

V.                        CASE NO. 3:19-CV-199-LPR-BD

ANTHONY CARTER, *et al.*                                                                  DEFENDANTS

RECOMMENDED DISPOSITION

I.  **Procedures for Filing Objections:**

This Recommendation has been sent to Judge Lee P. Rudofsky. Any party may file written objections. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt the Recommendation without independently reviewing the record. By not objecting, the parties may waive any right to appeal questions of fact.

II.  **Background:**

Donald Wayne Dwyer, an Arkansas Department of Correction inmate who was previously detained at the Greene County Detention Center (GCDC), filed this civil rights lawsuit without the help of a lawyer. He complains that he was denied adequate medical treatment at the GCDC for a broken finger. (Docket entries #1, #12)

Defendants have moved to dismiss Mr. Dwyer's claims against them. (#34) Mr. Dwyer has not responded to the motion, and the time for responding to the motion has passed.

### III. Discussion:

#### A. Standard

In deciding whether a plaintiff has adequately stated a claim for relief, the Court considers whether the allegations in the complaint are pleaded with enough specificity "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint cannot simply "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 1968 (citation omitted). Rather, the facts set forth in the complaint must "nudge [the] claims across the line from conceivable to plausible." *Id.* at 1974.

#### B. Official Capacity Claims

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68-69 (1989). Accordingly, Mr. Dwyer's official-capacity claims for money damages against the Defendants must be dismissed.

#### C. Individual-Capacity Claims – Deliberate Indifference

##### 1. Factual Background

Mr. Dwyer alleges that in June 2019, he submitted a sick-call request complaining that his hand was swollen and that his finger was broken. (#1 at p.4; #12 at p.1) On the same day that Mr. Dwyer submitted his sick-call request, Defendant Huggins examined

him. During the examination, Defendant Huggins instructed Mr. Dwyer to grip her hand and to squeeze as hard as he could. During that activity, Mr. Dwyer says that Defendant Huggins "heard and felt a pop" in his right hand. (*Id.*) Defendant Huggins offered Mr. Dwyer ibuprofen, but he refused the medication because he was already taking extra-strength ibuprofen. (#1 at p.4) Mr. Dwyer asked for an x-ray examination of his hand, and Defendant Huggins agreed to consult with a doctor about his request. (*Id.*) An hour later, Defendant Huggins told Mr. Dwyer that Defendant Carter[1] had declined to order an x-ray. (*Id.*)

On June 26, 2019, Mr. Dwyer submitted a medical request for a finger splint. (*Id.*) On the same day, Defendant Glenn examined him. (*Id.*) Defendant Glenn offered to wrap his hand and/or finger, but told him that he would have to be placed in isolation if he had that kind of bandage. (*Id.*) Mr. Dwyer refused the treatment by "walk[ing] out." (*Id.*)

According to the allegations in his complaint, Mr. Dwyer alleges that he changed his mind several days later and requested to have his finger wrapped. (*Id.* at p.5) The next day, J. Trobridge (not a party to this lawsuit) wrapped Mr. Dwyer's hand/finger. (*Id.*)

At an unknown date after Mr. Dwyer was transferred to another unit, an x-ray examination was performed, revealing that his finger had been broken, but had since healed. (#12 at p.1) Mr. Dwyer alleges that, although the finger healed, it did not heal properly and is now deformed. (*Id.*)

---

[1] In their motion, Defendants explain that Defendant Carter is a Certified Nurse Practitioner, rather than a physician.

2. Analysis

To state a claim against the Defendants for failing to provide constitutionally adequate medical care, Mr. Dwyer must plead facts indicating that he had an objectively serious medical need[2] and that the Defendants actually knew of that need, but deliberately failed to provide adequate care. *Estelle v. Gamble*, 429 U.S. 97, 104–08 (1976); *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Deliberate indifference is a high standard. It implies conduct more culpable than negligence; more culpable than even gross negligence. *Langford*, 614 F.3d at 460; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Stated another way, the Defendants can be held liable here only if their conduct was "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)); see also *Allard v. Baldwin*, 779 F.3d 768, 771–72 (8th Cir. 2015) (to prevail on an Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness).

a. Defendant Johnson

Mr. Dwyer fails to attribute any unconstitutional conduct to Defendant Johnson in either his original or amended complaint. He does not mention Defendant Johnson when

---

[2] A medical need is deemed objectively serious if it was "diagnosed by a physician as requiring treatment, or [was] so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009). Here, Defendants argue that Mr. Dwyer did not suffer from an objectively serious medical need. For the purposes of this motion, however, the Court will assume that he did.

4

describing the incidents giving rise to this lawsuit. Accordingly, Mr. Dwyer has failed to state a constitutional claim against Defendant Johnson.

    b. Defendant Huggins

Mr. Dwyer alleges that Defendant Huggins examined him the day that he submitted his first sick-call request complaining about pain in his hand. During the examination, Defendant Huggins physically assessed Mr. Dwyer and offered him pain medication. Following the examination, Defendant Huggins asked Defendant Carter whether Mr. Dwyer's finger should be x-rayed, and Defendant Carter determined that an x-ray was not necessary. According to Mr. Dwyer's complaint, Defendant Huggins did not refuse to provide him medical care; nor was she deliberately indifferent to his medical needs. To the contrary, Defendant Huggins provided Mr. Dwyer prompt medical treatment and offered him pain medication. Accordingly, Mr. Dwyer has failed to state a constitutional claim against Defendant Huggins.

    c. Defendant Glenn

Mr. Dwyer alleges that he submitted a sick-call request for a finger splint on June 26, 2019. Defendant Glenn responded to the request the same day and offered to wrap his finger. Mr. Dwyer states that he refused to allow Defendant Glenn to wrap his finger because she told him that he would have to be placed in isolation with that type of bandage. Based on these allegations, the Court cannot conclude that Defendant Glenn acted with deliberate indifference to Mr. Dwyer's needs. Rather, Defendant Glenn promptly offered the treatment Mr. Dwyer requested. Accordingly, Mr. Dwyer has failed to state a constitutional claim against Defendant Glenn.

    d.  Defendant Carter

Mr. Dwyer alleges that Defendant Carter was deliberately indifferent to his medical needs by failing to personally examine him and by failing to order an x-ray of his finger after Defendant Huggins had examined him. Mr. Dwyer complains that, as a result of the delay in receiving an x-ray and proper treatment for his broken finger, his finger is now deformed.

Defendant Carter might have been negligent in failing to order an x-ray of Mr. Dwyer's finger, but negligence is not a constitutional violation. According to Mr. Dwyer's allegations, when Defendant Huggins examined him, he was able to use his hand and fingers. He declined pain medication, although for a good reason, and elected not to have his hand and finger immediately splinted.

Other than allegations that Defendant Carter failed to order an x-ray examination after the initial assessment and failed to personally examine Mr. Dwyer, there is no further reference to Defendant Carter in either the original or amended complaint. Mr. Dwyer does not allege that he ever spoke with Defendant Carter to specifically request an x-ray examination or that Defendant Carter knew that he was experiencing hand or finger pain. Rather, based on Mr. Dwyer's own description of events, he received prompt medical treatment for his finger injury. Mr. Dwyer clearly disagrees with the course of treatment recommended by Defendant Carter, but he does not have a constitutional right to any "particular or requested course of treatment." *Dulany*, 132 F.3d at 1239.

Accordingly, Mr. Dwyer's constitutional claim against Defendant Carter also fails. See also *Monk v. Foster*, No. 1:11-CV-01054, 2013 WL 791420, at *9 (W.D. Ark. Feb.

12, 2013) ("[w]hile the delay in having Plaintiff's finger x-rayed may have been negligent, it does not rise to the level of deliberate indifference") (citing *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (the delay of one month from the time the plaintiff's finger was tentatively diagnosed as fractured and the x-ray of the finger was held to be merely negligent) and *Bryan v. Endell*, 141 F.3d 1290 (8th Cir. 1998) (the delay in treating prisoner's broken hand rendering surgery impractical was merely negligent where there was no evidence showing officials actually knew of the risk of harm but deliberately failed to act amounting to callousness)).[3]

## IV. Conclusion:

The Court recommends that Defendants' motion to dismiss (#34) be GRANTED and that Mr. Dwyer's claims be DISMISSED, with prejudice.

DATED, this 29th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] To the extent that Mr. Dwyer attempts to hold any of the Defendants liable based on their supervisory positions at the Detention Center, that claim also fails. In civil rights cases such as this, supervisors cannot be held liable for the constitutional violations of their subordinates based solely on the fact that they are supervisors. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); and *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").